No. 25-1579

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

---

ASHTON ORR, ZAYA PERYSIAN, SAWYER SOE, CHASTAIN ANDERSON, DREW HALL, BELLA BOE, REID SOLOMON-LANE, VIKTOR AGATHA, DAVID DOE, AC GOLDBERG, RAY GORLIN, CHELLE LEBLANC, on behalf of themselves and others similarly situated,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, U.S. DEPARTMENT OF STATE, MARCO RUBIO, in his official capacity as Secretary of State, UNITED STATES,

Defendants-Appellants.

---

On Appeal from the United States District Court
For the District of Massachusetts

---

# REPLY IN SUPPORT OF
# MOTION FOR STAY PENDING APPEAL

---

BRETT A. SHUMATE
  *Assistant Attorney General*

LEAH B. FOLEY
  *United States Attorney*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

CHARLES W. SCARBOROUGH
LEWIS S. YELIN
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave. NW, Rm. 7239*
  *Washington, D.C. 20530*
  *(202) 514-3425*
  *lewis.yelin@usdoj.gov*

## INTRODUCTION

The district court's class-wide injunction requires the State Department to issue passports that wrongly designate an individual's sex as their self-selected gender identity rather than their actual sex. Plaintiffs' response underscores the need for a stay pending appeal.

Plaintiffs fail to resuscitate the district court's equal-protection analysis, which was fatally undercut by the Supreme Court's decision in *United States v. Skrmetti*, 145 S. Ct. 1816 (2025). Plaintiffs pivot to the district court's animus rationale. But that too has been vitiated: the same objectives that sustain the Passport Policy under rational-basis review also demonstrate that it is not "inexplicable by anything but animus." *Trump v. Hawaii*, 585 U.S. 667, 706 (2018). As for the APA, plaintiffs fail to account for the President's constitutional and statutory authority to prescribe rules governing passports, which the State Department is required to implement.

Turning to the balance of harms, plaintiffs' tepid analysis does not meaningfully grapple with the significant injuries the class-wide injunction imposes on the government or the lack of support for the district court's speculation that *all* members of the class will suffer the same harms as the named plaintiffs. A stay is thus warranted.

## I. The Government Is Likely to Win on the Merits

### A. Equal-Protection Claims

*Skrmetti* makes clear that the Passport Policy is subject to rational-basis review, not heightened scrutiny. Plaintiffs' attempts to minimize the impact of *Skrmetti* cannot be squared with that decision's plain language or the Supreme Court's recognition that its analysis has significant implications for equal-protection claims in contexts very similar to this one. *See Stitt v. Fowler*, 2025 WL 1787695 (June 30, 2025) (granting, vacating, and remanding for reconsideration in light of *Skrmetti* in equal-protection challenge to state executive order prohibiting individuals from amending their birth certificates to reflect their gender identities).

Plaintiffs argue that the Passport Policy draws a sex-based distinction that is subject to heightened scrutiny. But they rely on the rationale of the *dissent* in *Skrmetti*. As the *majority* opinion makes clear, a policy that implicates sex but treats males and females the same does *not* classify based on sex for equal-protection purposes. *See* 145 S. Ct. at 1829 ("This Court has never suggested that mere reference to sex is sufficient to trigger heightened scrutiny."). Such a policy is subject only to rational-basis review. *Id.* at 1829, 1835-36.

In *Skrmetti*, "[t]he plaintiffs and the dissent" argued that a state law limiting minors' access to puberty blockers or hormones for treating gender dysphoria classified based on sex because "a minor whose biological sex is female cannot receive puberty blockers or testosterone to live and present as a male, but an adolescent whose biological sex is male can, while an adolescent whose biological sex is male cannot receive puberty blockers or estrogen to live and present as a female, but an adolescent whose biological sex is female can." 145 S. Ct. at 1830. The Court rejected that framing, holding that access to medical interventions did not turn on sex because both boys and girls have access if it is not for a restricted use. *Id.* at 1830-31.

Plaintiffs' response largely tracks the reasoning of the *Skrmetti* dissent. Plaintiffs contend that the Passport Policy classifies based on sex because "[a] person who identifies as female can receive a passport marked 'F' if her sex assigned at birth was female, but not if her sex assigned at birth was male. Likewise, a person who identifies as male can receive a passport marked 'M' if his sex assigned at birth was male, but not if his sex assigned at birth was female." Resp. 11 (quoting ECF 74, at 18). This is precisely the framing the *Skrmetti* majority rejected.

3

As in *Skrmetti*, the Passport Policy applies equally to males and females. Neither may self-select the sex field on their passports based on their "gender identity"; the passports of both must reflect "an individual's immutable biological classification as either male or female." E.O. § 2; *see Skrmetti*, 145 S. Ct. at 1830-31.

Plaintiffs dispute the characterization of the Passport Policy as a prohibition on self-selection of sex. Resp. 13. But that is how the district court understood the policy. *See* Mot. Ex. 2, at 3. And as the response makes clear, plaintiffs do not contest the use of sex classifications in passports. Instead, they challenge the Passport Policy's rejection of their preferred conception of sex, which includes "gender identity." Resp. 11. But nothing in the Supreme Court's equal-protection jurisprudence supports plaintiffs' view that a policy that prohibits *any* individual from self-selecting their sex marker is subject to heightened scrutiny.[1]

---

[1] Plaintiffs largely retreat (Resp. 13-14) from the district court's reliance on *Bostock v. Clayton County*, 590 U.S. 644 (2020), which informed the court's framing of the equal-protection analysis, *see* ECF 74, at 18-19. As the government's motion explains (Mot. 13-15) *Bostock*'s analysis of Title VII does not apply to equal-protection claims and, in any event, would not change the outcome here—something plaintiffs' response does not dispute.

4

Because the prohibition on self-selection does not discriminate based on sex, it is subject only to rational-basis review, which it easily satisfies. *See* Mot. 15-17. Among other things, the policy furthers the government's interest in using an objective, accurate, and immutable definition of sex consistently throughout the Executive Branch.

Plaintiffs contend that the government waived reliance on the interest in an objective, biologically based definition of sex rather than a subjective notion of "gender identity" because the government did not identify that interest in the district court. Resp. 16. That is incorrect, as the government asserted a "legitimate interest" in a "biologically based definition of sex" rather than a "subjective" conception of "gender identity" that is "disconnected from biological reality." ECF 53, at 12, 13. Nor is there merit to plaintiffs' claim that the Executive Order did not identify an interest in "maintaining a consistent definition of sex across the federal government." Resp. 15. As plaintiffs acknowledge elsewhere (Resp. 23), the Executive Order's entire purpose is to direct the use of an "immutable biological classification as either male or female" across the Executive Branch, E.O. § 2(a); *see* E.O. §§ 2, 3.

5

Plaintiffs also fault the government for failing to provide evidence that an objective definition of sex is superior to their preferred subjective conception. Resp. 16-17. But classifications subject to rational-basis review are "presumed constitutional," so the "burden is on the one attacking the [classification] to negative every conceivable basis which might support it." *Armour v. Indianapolis*, 566 U.S. 673, 681 (2012). Plaintiffs' conclusory assertion that "the Passport Policy is irrational and unreasoned" is insufficient. Resp. 17.

Because there are obvious, rational reasons for the Passport Policy, the district court's determination that the policy was motivated by animus cannot support the injunction either. *Cf.* Resp. 8-10, 17. The policy was adopted to further the valid objectives the Executive Order identified, so it is not "inexplicable by anything but animus." *Hawaii*, 585 U.S. at 706. Plaintiffs contend that the government waived this argument because it was made only in "passing" in the stay motion. Resp. 8. But the government spent pages (Mot. 15-17) identifying several valid reasons for the policy that were not grounded in animus. Those reasons supplied the premise for the government's conclusion that the policy was not "inexplicable by

6

anything but animus." Mot. 17. Plaintiffs thus err in asserting that the government made the argument only in "passing."

### B. APA Claims

Plaintiffs' response to the argument that the Passport Policy is not subject to APA review fails to grapple with the fundamental distinction between "an action that Congress had committed to the sole discretion of the President," and one that Congress "delegated to an agency head but [that was] directed by the President." Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2351 (2001). In the latter case, "review provisions usually applicable to that agency's action" may govern. *Id.* But in the former, the substance of the policy is not subject to APA review because the President is not an "agency" within the meaning of the statute. *See Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992).

Congress recognized the President's constitutionally based authority to determine the content of passports, providing that "[t]he Secretary of State may grant and issue passports … under such rules as the President shall designate and prescribe for and on behalf of the United States." 20 U.S.C. § 211a. This is the sort of statute that commits an action to the President's sole discretion. It affords the

7

State Department no room to depart from a rule the President prescribes. The State Department was thus "compelled by," *Bradford v. DOL*, 101 F.4th 707, 731 (10th Cir. 2024), the Executive Order to list a passport applicant's sex on their passport rather than allow the applicant to select their "gender identity." Accordingly, it "could not have been an arbitrary and capricious exercise of agency discretion," *id.*, for the State Department to adopt a policy designating "an individual's immutable biological classification as either male or female," E.O. § 2(a), "because the agency had *no discretion* to act otherwise," *Bradford*, 101 F.4th at 731.[2]

This Court's decision in *New York v. Trump*, 133 F.4th 51, 70 n.17 (1st Cir. 2025), on which plaintiffs rely (Resp. 18-19), is not to the contrary. That case involved an OMB memorandum implementing an Executive Order directing agencies to pause the disbursement of funds appropriated by statute to agencies. *New York*, 133 F.4th at 57-59. Accordingly, that case involved an exercise of authority "delegated

---

[2] Plaintiffs note the Ninth Circuit's disagreement with *Bradford*. Resp. 22 (discussing *State v. Su*, 121 F.4th 1 (9th Cir. 2024)). But that disagreement was about whether the statute at issue committed an action to the President's sole discretion. *See Su*, 121 F.4th at 7-8. The Ninth Circuit did not question the principle that where—as here—a statute *does* do that, APA review of agency action implementing a presidential directive is unavailable.

8

to an agency head but directed by the President," *Presidential Administration*, *supra*, at 2351, not a statute like 20 U.S.C. § 211a, which commits an action to the President's sole discretion.

In any event, even if some aspects of the State Department's implementation of Executive Order 14168 were subject to review, the agency's actions easily pass the lenient arbitrary-and-capricious standard for the same reasons that the policy satisfies rational-basis review.

Finally, plaintiffs have forfeited any defense of the district court's APA ruling based on the Paperwork Reduction Act (PRA). As explained in our stay motion (at 19-20), the government corrected any PRA error, which can no longer provide any basis for enjoining the Passport Policy. Plaintiffs offer no response except to assert, in a footnote, that they "maintain, and do not waive, their APA claim that the Policy violated the PRA." Resp. 18 n.2. That is insufficient to preserve the argument for purposes of the stay motion. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Flanders-Borden*, 11 F.4th 12, 18 (1st Cir. 2021).

## II. The Balance of Equities Favors a Stay

Plaintiffs' principal response to the significant harms the class-wide injunction will impose on the government is to urge the Court to ignore them. But plaintiffs' head-in-the sand approach flouts basic principles of equity. And plaintiffs' defense of the district court's speculation that all class members will likely experience the same alleged irreparable harm as the named plaintiffs is equally invalid.

Plaintiffs' contention that the government's "delay" in seeking a stay undermines its showing of irreparable harm is difficult to comprehend. Resp. 24. The government simply gave the district court an opportunity to correct its erroneous equal-protection ruling in light of *Skrmetti*, which was decided the day after the court issued the class-wide injunction. *See* ECF 127. The district court denied the government's motion on July 11 and indicated it would not grant a stay. Mot. Ex. 7 (ECF 130). The government filed its notice of appeal that day. ECF 131. And it sought a stay pending appeal from this Court within a week. This is hardly the sort of "leisurely approach to the question of preliminary injunctive relief" that undermines claims of irreparable injury. *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004).

Plaintiffs contend that the preliminary injunction does not burden the President's authority to communicate with foreign sovereigns because the Passport Policy is akin to denials of passports based on political belief or affiliation, which the Supreme Court has distinguished from passport policies that implicate the Executive Branch's foreign policy authorities. Resp. 22-23 (discussing, among others, *Zemel v. Rusk*, 381 U.S. 1, 13 (1965)). But the district court's injunction falls squarely into the latter bucket. The Passport Policy does not deny anyone a passport but instead addresses the content of certain information contained in passports. The injunction compels the government to communicate a message to foreign sovereigns that conflicts with the government's policy—a direct intrusion on the President's constitutional and statutory authority.[3] Mot. 21-23.

Plaintiffs also assert that the administrative burdens identified by the government are "vague." Resp. 24. But the government identified specific administrative costs that will follow from the class-wide injunction. *See* Mot. 23-24, Mot. Ex. 9. For example, the State

---

[3] Plaintiffs' contention (Resp. 24) that the government did not argue below that the government has an interest in its controlling its speech is belied by the record. *See, e.g.*, ECF 53, at 9, 10, 12, 15; ECF 105, at 53.

11

Department explained, based on plaintiffs' estimates, that "the total extra work hours that could be spent adjudicating applications by members of the PI class is assessed to be approximately 1,253,333 extra hours." Mot. Ex. 9, ¶ 9. In keeping with their head-in-the sand approach, plaintiffs urge this Court to ignore the government's declaration, because "it is improper to consider 'evidence not presented to the district court' at the time it ruled on the preliminary injunction." Resp. 24-25 (quoting *Smith v. Jenkins*, 732 F.3d 51, 76 (1st Cir. 2013)). But *Smith* has nothing to do with preliminary injunctions and stands only for the proposition that a party on appeal may not rely on evidence "not in the record before the district court." 732 F.3d at 76. The government's declaration is in the record. *See* ECF 127-2.

Meanwhile, plaintiffs say very little about the purported injuries to class members if this Court were to enter a stay. They contend that the deprivation of constitutional rights is an irreparable injury. Resp. 25. But that assumes they are likely to succeed on the merits, which is wrong, and it boils down to the untenable proposition that plaintiffs show irreparable harm anytime they raise a constitutional claim. Plaintiffs identify various alleged psychological harm and harassment

they claim class members will suffer without an injunction, and they say that it was appropriate for the district court to assume the named plaintiffs' alleged injuries are representative of those of the class. Resp. 25-26. But they nowhere rebut the government's contention that the district court made "an obvious mistake of judgment," *DraftKings Inc. v. Hermalyn*, 118 F.4th 416, 419 (1st Cir. 2024), by extrapolating the named plaintiffs' alleged injuries to the class based on expert declarations stating that only a *minority* of trans-identifying individuals suffer those injuries. *See* Mot. 25-26.

## CONCLUSION

The Court should grant a stay of the class-wide preliminary injunction pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

LEAH B. FOLEY
  *United States Attorney*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

CHARLES W. SCARBOROUGH

*s/Lewis S. Yelin*
LEWIS S. YELIN
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave. NW, Rm. 7239*
  *Washington, D.C. 20530*
  *(202) 514-3425*
  *lewis.yelin@usdoj.gov*

August 2025

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because the motion contains 2,553 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) because it has been prepared using proportionally spaced 14-point Georgia typeface.

*s/Lewis S. Yelin*
LEWIS S. YELIN
*Counsel for the defendants-appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/Lewis S. Yelin*
LEWIS S. YELIN
*Counsel for the defendants-appellants*
