No. 25-1579

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

ASHTON ORR; ZAYA PERYSIAN; SAWYER SOE; CHASTAIN ANDERSON; DREW HALL; BELLA BOE; REID SOLOMON-LANE; VIKTOR AGATHA; DAVID DOE; AC GOLDBERG; RAY GORLIN; CHELLE LEBLANC, on behalf of themselves and others similarly situated,

Plaintiffs - Appellees,

v.

DONALD J. TRUMP, in the official capacity as President of the United States; U.S. DEPARTMENT OF STATE, MARCO RUBIO, in the official capacity as Secretary of State; UNITED STATES OF AMERICA,

Defendants - Appellants.

On Appeal from the United States District Court for the District of Massachusetts, No. 1:25-cv-10313-JEK
The Honorable Julia Eleanor Kobick

## CORRECTED BRIEF OF INDIANA, TWENTY-THREE OTHER STATES, AND THE ARIZONA LEGISLATURE AS AMICI CURIAE IN SUPPORT OF APPELLANTS AND REVERSAL

Office of the Indiana Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

THEODORE E. ROKITA
Attorney General of Indiana

JAMES A. BARTA
Solicitor General
LAUREN R. LABAUMBARD
Deputy Attorney General

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................ii

INTERESTS OF AMICI CURIAE ........................................... 1

SUMMARY OF THE ARGUMENT ......................................... 2

ARGUMENT ...................................................................... 4

I.    The Constitution Permits the Government to Issue Papers
      That Record Sex Rather than Subjective Identities....................... 4

II.   Recording Only Sex on Passports Is a Legitimate and
      Rational Choice ................................................ 11

CONCLUSION .................................................. 16

# TABLE OF AUTHORITIES

## CASES

*Corbitt v. Sec'y of the Ala. L. Enf't Agency*,
  115 F.4th 1335 (11th Cir. 2024) .......................................................... 13

*Free Speech Coal., Inc. v. Paxton*,
  606 U.S. 461 (2025) ................................................................................ 4

*Frontiero v. Richardson*,
  411 U.S. 677 (1973) ............................................................................... 6

*Gore v. Lee*,
  107 F.4th 548 (6th Cir. 2024) ...........................6, 7, 8, 9, 10, 11, 13, 14

*Haig v. Agee*,
  453 U.S. 280 (1981) .............................................................................. 14

*Ind. Bureau of Motor Vehicles v. Simmons*,
  233 N.E.3d 1016 (Ind. Ct. App. 2024) ......................................... 13, 15

*K.C. v. Individual Members of Med. Licensing Bd. of Ind.*,
  121 F.4th 604 (7th Cir. 2024) ............................................................... 9

*L.A. v. Braun*,
  No. 1:25-cv-596-MPB-TAB, 2025 WL 2894154 (S.D. Ind.
  Sep. 26, 2025) ........................................................................................ 8

*Lange v. Houston Cnty.*,
  152 F.4th 1245 (11th Cir. 2025) ........................................................... 9

*Michael M. v. Super. Ct. of Sonoma Cnty.*,
  450 U.S. 464 (1981) ............................................................................... 6

*Reed v. Reed*,
  404 U.S. 71 (1971) ................................................................................. 6

*Sessions v. Morales-Santana*,
  582 U.S. 47 (2017) ................................................................................. 6

CASES [CONT'D]

*Shurtleff v. City of Boston*,
  596 U.S. 243 (2022) ........................................................................ 7, 14

*Trump v. Hawaii*,
  585 U.S. 667 (2018) .............................................................................. 11

*United States v. Laub*,
  385 U.S. 475 (1967) .............................................................................. 14

*United States v. Skrmetti*,
  605 U.S. 495 (2025) ..................................................................... 5, 9, 10

*United States v. Virginia*,
  518 U.S. 515 (1996) ................................................................................ 6

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*,
  576 U.S. 200 (2015) .............................................................................. 14

STATUTES AND RULES

Act of Mar. 1, 1790, 1 Stat. 101, 101 ........................................................ 7

22 C.F.R. § 51.7(a) ...................................................................................... 14

OTHER AUTHORITIES

Shaziya Allarakha*, What are the 72 Other Genders*,
  MedicineNet (Feb. 9, 2024),
  https://www.medicinenet.com/what_are_the_72_other_gen
  ders/article.htm .................................................................................. 15

*Sex*, *American Heritage Dictionary* (online ed.) ........................................ 5

*Sex*, 8 *A New English Dictionary on Historical Principles* 577
  (Sir James A. H. Murray et al. eds., Oxford at the
  Clarendon Press 1914) ......................................................................... 5

Aditi Bhargava et al., *Considering Sex as a Biological
  Variable in Basic and Clinical Studies*, 42 Endocrine
  Reviews 219 (2021) ............................................................................. 12

iii

O**THER** A**UTHORITIES** [C**ONT**'**D**]

*Sex*, *Black's Law Dictionary* (2d ed. 1910)................................................5

Laura Blakeslee et al., *Age and Sex Composition: 2020
    Census Briefs* (2023), https://www2.census.gov/library/
    publications/decennial/2020/census-briefs/
    c2020br-06.pdf;......................................................................7

Walter O. Bockting, *Transgender Identity Development*, in 1
    Am. Psych. Ass'n, *APA Handbook of Sexuality and
    Psychology* 739 (D.L. Tolman & L.M. Diamond eds., 2014)..............12

H.L. Brumberg et al., *History of the Birth Certificate: From
    Inception to the Future of Electronic Data*, 32 J. of
    Perinatology 407 (2012) ........................................................8

*California is the first state to allow gender neutral birth
    certificates*, WTHR (Oct. 19, 2017), https://www.wthr.com/
    article/news/trending-viral/california-is-the-first-state-to-
    allow-gender-neutral-birth-certificates/531-bd724a01-
    10f7-4545-8cfe-d0388abb81ac.............................................8, 9

Chassitty N. Fiani & Heather J. Han, *Navigating identity:
    Experiences of binary and non-binary transgender and
    gender non-conforming (TGNC) adults*, 20(2–3) Int. J.
    Transgenderism 181 (2018) ...................................................15

*Sex*, 2 *Funk & Wagnalls New Standard Dictionary of the
    English Language* (Encyclopedia Britannica, Inc. 1960).....................5

Alice M. Hetzel, U.S. Dep't of Health & Hum. Servs., *U.S.
    Vital Statistics System: Major Activities & Developments,
    1950–95* (1997) .................................................................7

Minesh Khatri, *What Is Fluid?*, WebMD (Aug. 9, 2025),
    https://www.webmd. com/sex/what-is-fluid................................12, 13

OTHER AUTHORITIES [CONT'D]

Michael K. Laidlaw et al., *Letter to the Editor, "Endocrine Treatment of Gender-Dysphoric / Gender-Incongruent Persons: An Endocrine Society Clinical Practice Guideline"*, 104 J. Clinical Endocrinology & Metabolism 686 (2019) ........................................................................... 12

Ian C. Langree, *How Many Genders Are There? List of Gender Identities* (updated June 11, 2025), https://www. disabled-world.com/disability/sexuality/lgbt/ genders.php ............................................................... 15

Lisa Littman et al., *Detransition and Desistance Among Previously Trans-Identified Young Adults*, 53 Archives of Sexual Behavior 57 (2024) ................................................. 12

*Sex*, *Merriam-Webster's Dictionary* (online ed.) ........................................ 5

Katy Steinmetz, *M, F, or X: Oregon Becomes First State to Allow Non-Binary Gender Marker on Drivers Licenses*, Time (June 15, 2017), https://time.com/4820930/ nonbinary-gender-marker-oregon-drivers-license .............................. 8

*The Federalist No. 44* (J. Madison) (C. Rossiter ed. 1961) ...................... 4

## INTERESTS OF AMICI CURIAE[1]

The States of Indiana, Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Montana, Nebraska, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, Utah, West Virginia, and Wyoming and the Arizona Legislature submit this amicus curiae brief in support of appellants.

This case asks this Court to decide whether the Constitution and federal statutes give passport applicants the right to self-define their "sex." The answer to that question is of significant interest to amici States. All keep a variety of state records that list sex and issue state papers, such as birth certificates and driver's licenses, that record persons' sex. For sex to be a useful category of information, States must be able to adopt some consistent definition of the term rather than let individuals be definitions unto themselves.

---

[1] No party's counsel authored this brief in whole or in part, no party or party's counsel contributed money that was intended to fund this brief's preparation or submission; and no person, other than amici curiae or their counsel, contributed money intended to fund this brief's preparation or submission.

Under plaintiffs' theory, however, the federal government, and presumably States, cannot employ a traditional understanding of sex without violating the Constitution. But no constitutional principle requires government-issued papers to serve as canvases for self-expression. *See, e.g.*, Add. 1–2 (*Trump v. Orr*, No. 25A319, 2025 WL 3097824, at *1 (U.S. Nov. 6, 2025) (holding that the government's choice to "[d]isplay passport holders' sex at birth . . . [does not] offend[] equal protection principles" because "the Government is merely attesting to a historical fact without subjecting anyone to differential treatment")). This Court should reverse the district court's preliminary injunction.

## SUMMARY OF THE ARGUMENT

In requiring U.S. passports to reflect a traditional understanding of sex, the federal government violated no constitutional principle. To list sex on passports—an action no one disputes the government can take— the government must be able to say what sex is. Understanding sex as the characteristic of being biologically male or female accords with common usage, Supreme Court precedent, and historical practice. Passport applicants have no right to decide how government-issued

documents, which are property of the federal government, describe applicants' sex.

Plaintiffs wrongly argue that the challenged policy discriminates on the basis of sex or transgender identification. Under the challenged policy, no person can request that a passport record a trait other than the person's sex. What plaintiffs demand is not equal, but preferential, treatment for persons who identify as transgender or nonbinary. The Constitution does not require the government to accommodate plaintiffs' desire for passports that record their current gender identities rather than the historical and biological fact of their sex.

There are, moreover, good reasons to record sex, rather than unverifiable and changeable senses of gender, on passports and other papers. Directing that all passports reflect sex promotes consistent records and provides an objective trait that can be used for identification purposes while avoiding difficulties that would accompany recording a subjective trait that can change and be expressed in innumerable ways.

# ARGUMENT

## I.    The Constitution Permits the Government to Issue Papers That Record Sex Rather than Subjective Identities

Plaintiffs do not challenge the federal government's decades-old practice of issuing passports that record the bearer's sex. Instead, their quarrel is with how the government understands sex. Plaintiffs want a policy of self-selection under which every passport applicant decides what "sex" means, arguing that it is unconstitutional to treat "sex" as referring to a binary, biological trait. App. 5, 21 (Complaint); App. 856 (Amended Complaint); ECF 30, at 26–27. But it cannot be that the Constitution empowers the government to issue passports recording sex, yet withholds the power to define the term. "'No axiom is more clearly established in law, or in reason, than that . . . wherever a general power to do a thing is given, every particular power necessary for doing it is included.'" *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 478 (2025) (quoting *The Federalist No. 44*, at 285 (J. Madison) (C. Rossiter ed. 1961)). It thus follows that the government can adopt an "'ordinary and appropriate means'" of defining sex. *Id.* at 478–79.

In adopting a biological understanding of sex, the federal government did just that. Evidence that sex ordinarily refers to a binary,

biological trait—not an unverifiable internal identity—abounds. *See United States v. Skrmetti*, 605 U.S. 495, 558 (2025) (Alito, J., concurring). Dictionaries, both old and new, speak of "sex" as referring to "the two major forms of individuals that occur in many species and that are distinguished respectively as female or male especially on the basis of their reproductive organs and structures." *Sex*, *Merriam-Webster's Dictionary* (online ed.); *see*, *e.g.*, *Sex*, *American Heritage Dictionary* (online ed.); *Sex*, 8 *A New English Dictionary on Historical Principles* 577 (Sir James A. H. Murray et al. eds., Oxford at the Clarendon Press 1914) ("[e]ither of the two divisions of organic beings distinguished as male and female respectively; the males or the females (of a species, etc., esp. of the human race) viewed collectively")); *Sex*, 2 *Funk & Wagnalls New Standard Dictionary of the English Language* 1152–53 (Encyclopedia Britannica, Inc. 1960) ("[e]ither of two divisions, male and female, by which organisms are distinguished with reference to the reproductive functions"); *Sex*, *Black's Law Dictionary* 1081 (2d ed. 1910) ('[t]he distinction between male and female; or the property or character by which an animal is male or female").

The Supreme Court's decisions also leave no doubt that sex ordinarily refers to being biologically male or female. *See*, *e.g.*, *Sessions v. Morales-Santana*, 582 U.S. 47, 58 (2017) (using "sex" in discussing legislation distinguishing between "mothers" and "fathers"); *United States v. Virginia*, 518 U.S. 515, 532–33 (1996) (using "sex" to discuss "enduring" "[p]hysical differences between men and women"); *Michael M. v. Super. Ct. of Sonoma Cnty.*, 450 U.S. 464, 469–70 (1981) (acknowledging differences between "the sexes" when it comes to the "consequences of sexual activity," such as pregnancy); *Frontiero v. Richardson*, 411 U.S. 677, 686, 688 (1973) (describing "sex" as an "immutable characteristic determined solely by the accident of birth"); *Reed v. Reed*, 404 U.S. 71, 76 (1971) (describing how a "sex" classification gives a "preference to members of either sex over members of the other"). It cannot be that the Constitution bars the federal government from employing the same understanding of sex as the Supreme Court.

Any argument that the "Constitution requires [the government] to use 'sex' to refer to gender identity" on government documents runs into a host of difficulties. *Gore v. Lee*, 107 F.4th 548, 557 (6th Cir. 2024). For one, there is no deeply rooted, historically established fundamental right

to require the government to adopt a particular terminology in keeping records and issuing papers. *See id.* The government must be able to decide "what to say and what not to say" in its own records "for government to work." *Shurtleff v. City of Boston*, 596 U.S. 243, 251 (2022). "How . . . could a government keep uniform records of any sort if the disparate views of its citizens about shifting norms in society controlled the government's choices of language and of what information" to put on government-issued papers? *Gore*, 107 F.4th at 557.

For another, the federal government and States have used the challenged policy's understanding of "sex" ever since the Constitution was adopted. In 1790, for example, the first Congress commissioned a census and directed census takers to "distinguish[]" between "the sexes." Act of Mar. 1, 1790, 1 Stat. 101, 101. Every U.S. census since has likewise collected information about "sex"—meaning whether "an individual [i]s male or female"—not "gender." Laura Blakeslee et al., *Age and Sex Composition: 2020 Census Briefs* (2023), https://www2.census.gov/library/publications/decennial/2020/census-briefs/c2020br-06.pdf; *see* Alice M. Hetzel, U.S. Dep't of Health & Hum. Servs., *U.S. Vital Statistics System: Major Activities & Developments, 1950–95* at 28 tbl. 1 (1997).

States, too, have "consistently" kept birth certificates and other records that reflect sex is a biological concept. *Gore*, 107 F.4th at 555–56. Massachusetts started the practice of recording newborns' sex in 1842, and with federal encouragement, all other States eventually followed. *See id.* at 551–52, 555–56; H.L. Brumberg et al., *History of the Birth Certificate: From Inception to the Future of Electronic Data*, 32 J. of Perinatology 407, 408–09 (2012). "Since 1907," for example, "Indiana has deliberately chosen to record sex—not gender identity—on birth certificates." *L.A. v. Braun*, No. 1:25-cv-596-MPB-TAB, 2025 WL 2894154, at *8 (S.D. Ind. Sep. 26, 2025), *appeal dismissed*.

Only in the last few years have some authorities begun allowing persons to self-define "sex" on government-issued papers. Before 2017, no State allowed persons to request changes to the sex recorded on birth certificates "based on self-designation alone" or offered "X" as an identification option. *Gore*, 107 F.4th at 552; *see* Katy Steinmetz, *M, F, or X: Oregon Becomes First State to Allow Non-Binary Gender Marker on Drivers Licenses*, Time (June 15, 2017), https://time.com/4820930/nonbinary-gender-marker-oregon-drivers-license/; *California is the first state to allow gender neutral birth certificates*, WTHR (Oct. 19, 2017),

8

https://www.wthr.com/article/news/trending-viral/california-is-the-first-state-to-allow-gender-neutral-birth-certificates/531-bd724a01-10f7-4545-8cfe-d0388abb81ac. And the federal government only began allowing passport applicants to self-define sex in 2021. *See* App. 843. The notion that the Constitution requires the federal government to continue a policy adopted just four years ago finds no support.

Examining the matter through *United States v. Skrmetti*, 605 U.S. 495 (2025), does not alter the analysis. Again, plaintiffs do not claim there is a problem with recording sex on passports or issuing the sexes passports with different sex markers. Instead, plaintiffs take issue with the decision to issue passports that reflect "their sex assigned at birth." App. 11, 22 (Complaint); App. 863, 873 (Amended Complaint); ECF 30, at 18. But the decision to record sex rather than gender identity does not violate equal protection. As *Skrmetti* explains, a policy discriminates based on sex only where it "prohibit[s] conduct for one sex that it permits for the other" or confers a benefit on one sex that it withholds from the other. *Skrmetti*, 605 U.S. at 514–15; *accord Lange v. Houston Cnty.*, 152 F.4th 1245, 1251 (11th Cir. 2025) (en banc); *K.C. v. Individual Members of Med. Licensing Bd. of Ind.*, 121 F.4th 604, 616 (7th Cir. 2024); *Gore*,

9

107 F.4th at 556. A policy that requires all passports to record sex does not "ascribe different benefits and burdens to the sexes." *Gore*, 107 F.4th at 556.

The U.S. Supreme Court's recent stay of the district court's preliminary injunction underscores the point. The Court held that the federal government is likely to succeed on the merits in this case. Add. 1–2 (*Orr*, No. 25A319, 2025 WL 3097824, at *1). The government's choice to "[d]isplay passport holders' sex at birth no more offends equal protection principles than displaying their country of birth—in both cases, the Government is merely attesting to a historical fact without subjecting anyone to differential treatment." *Id*. That analysis controls here.

For similar reasons, the challenged policy does not discriminate based on transgender identification—which is not a suspect or quasi-suspect class in any event. *See Skrmetti*, 605 U.S. at 549–50 (Barrett, J., concurring); *id*. at 575 (Alito, J., concurring). The government's policy does not create two groups of people, with transgender- and nonbinary-identifying passport applicants in one group and all other applicants in the other. Under the policy, "no" applicant can obtain a passport that

10

records a sex different from the applicant's sex. *See id.* at 1831 (majority op.). A female applicant who identifies as female but wishes for her passport to describe her sex as "X" to express disdain for traditional views of sex can no more obtain a passport with an "X" than a female applicant who identifies as non-binary. In short, the challenged policy does not single out either sex or any gender identity for less favorable or more beneficial treatment. It establishes a single rule that applies to everyone.

## II. Recording Only Sex on Passports Is a Legitimate and Rational Choice

Plaintiffs resort to accusations of animus. App. 6 (Complaint); App. 878 (Amended Complaint); ECF 30, at 2, 13–14, 20, 27. As the Supreme Court recently recognized, however, it is not wholly irrational for the federal government to use the same "consistent, historical, and biologically based definition of sex" that many States use. *Gore*, 107 F.4th at 561; *see* Add. 1–2 (*Orr*, No. 25A319, 2025 WL 3097824, at *1 (holding that the challengers failed to show that the government's choice to "display biological sex" on passports "'lack[s] any purpose other than a bare . . . desire to harm a politically unpopular group'" (quoting *Trump v. Hawaii*, 585 U.S. 667, 705 (2018)). The government's choice to prohibit self-selection has several rationales, including maintaining accurate

government records, using clear and accurate classifications that reflect biological reality, and maintaining a consistent definition of sex throughout the federal government. *See* App. 1–2 (Exec. Order No. 14,168 (Jan. 20, 2025), 90 Fed. Reg. 8,615 (Jan. 20, 2025)).

Consider first interests in accurate, consistent classifications. Sex can be objectively verified. *See* Aditi Bhargava et al., *Considering Sex as a Biological Variable in Basic and Clinical Studies*, 42 Endocrine Reviews 219, 220–21 (2021). An inner identity cannot. *See* Michael K. Laidlaw et al., *Letter to the Editor, "Endocrine Treatment of Gender-Dysphoric/Gender-Incongruent Persons: An Endocrine Society Clinical Practice Guideline"*, 104 J. Clinical Endocrinology & Metabolism 686, 686 (2019). Sex is also stable. Bhargava et al., *supra*, at 220–21. Identities can—and do—change. *See* Walter O. Bockting, *Transgender Identity Development*, in 1 Am. Psych. Ass'n, *APA Handbook of Sexuality and Psychology* 739, 744 (D.L. Tolman & L.M. Diamond eds., 2014); Lisa Littman et al., *Detransition and Desistance Among Previously Trans-Identified Young Adults*, 53 Archives of Sexual Behavior 57, 57 (2024). Indeed, some go so far as to describe their identities as "fluid." Minesh Khatri, *What Is Fluid?*, WebMD (Aug. 9, 2025), https://www.webmd.com

/sex/what-is-fluid. That renders it "rational[]" for the government to conclude that "recording . . . [the] objective characteristic of sex better advances the [government's] interest in accurate identification than would recording a person's subjective . . . identity." *Ind. Bureau of Motor Vehicles v. Simmons*, 233 N.E.3d 1016, 1028 (Ind. Ct. App. 2024), *trans. denied*, 248 N.E.3d 1196 (Ind. 2024); *see Corbitt v. Sec'y of the Ala. L. Enf't Agency*, 115 F.4th 1335, 1349–50 (11th Cir. 2024).

Plaintiffs' proffered alternative—treating sex as a self-defined trait—demonstrates the rationality of the challenged policy. If plaintiffs had their way, some U.S. passports "would show biological sex, others gender identity." *Gore*, 107 F.4th at 561. That would perpetuate internally inconsistent recordkeeping. *See* App. 848 (explaining that "the Executive Order indicates a government-wide shift to using one uniform definition of 'sex,' so a change in the [State] Department's policies was also needed to support the goal of uniformity"). Given that gender identities can change—even "daily," Khatri, *supra*—plaintiffs' approach would create situations in which the information printed in passports does not match the passport holders' current perceptions of themselves. That makes the information recorded less valuable and creates logistical

13

complications for the government, which must decide what to do about the inconsistency. The federal government could rationally respond to these possibilities by adopting a single, uniform definition of "sex" that reflects biological reality.

Not only is plaintiffs' demand that the federal government use their preferred definition of sex unreasonable, but it neglects the fact that passports are the property of the United States. 22 C.F.R. § 51.7(a) ("[a] passport at all times remains the property of the United States"). Passports are official government documents addressed to foreign nations. *Haig v. Agee*, 453 U.S. 280, 292 (1981); *see United States v. Laub*, 385 U.S. 475, 481 (1967). And as the property owner of passports, it is the federal government's prerogative to determine which characteristics it records. *See Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207–08 (2015). "When the government wishes . . . to formulate policies, . . . it naturally chooses what to say and what not to say and [t]hat must be true for government to work." *Shurtleff*, 596 U.S. at 251. The government could not "keep uniform records of any sort if the disparate views of its citizens about shifting norms in society" dictated what the government could say in its papers. *Gore*, 107 F.4th at 557.

14

Then there is the problem of manageable limits. Although there are two sexes, gender identity is not so limited. Gender identity is a subjective inner perception, which means there can be as many possible identities as people have perceptions of themselves. Some sources say there are dozens of identities, *see* Shaziya Allarakha, *What are the 72 Other Genders*, MedicineNet (Feb. 9, 2024), https://www. medicinenet.com/what_are_the_72_other_genders/article.htm; others many more, *see* Chassitty N. Fiani & Heather J. Han, *Navigating identity: Experiences of binary and non-binary transgender and gender non-conforming (TGNC) adults*, 20(2–3) Int. J. Transgenderism 181, 182–83 (2018) (discussing the 343 gender identities recognized by some organizations); Ian C. Langree, *How Many Genders Are There? List of Gender Identities* (updated June 11, 2025), https://www.disabled-world. com/disability/sexuality/lgbt/genders.php. Whatever one makes of those sources, they illustrate the point: administrative considerations make it rational to record "an individual's sex" instead of "reporting a subjective status with innumerable designations." *Simmons*, 233 N.E.3d at 1028; *see* ECF 127-2, at 5 (estimating adjudicating applications from the

preliminary-injunction class would take "approximately 1,253,333 extra hours").

While plaintiffs have suggested that the government could offer a limited number of options (M, F, and X), *see* ECF 30, at 2, 6, 16, their argument lacks any limiting principle. If, as plaintiffs claim, it is a constitutional problem to "recognize only two sexes . . . male or female," ECF 30, at 18, then it is equally a problem to say that there are only three genders. And if the Constitution requires that the government issue passports with an "M" to females who identify as male, *id.* at 18, logically the government should have to cater to other identities in the same way. Why should the government be able to issue passports with an impersonal "X" to those who feel that the letter does not accurately capture their sense(s) of gender? The answer to that question—and plaintiffs' whole case—is that decisions about which traits to record on passports are the stuff of policy, not constitutional law.

## CONCLUSION

The Court should vacate the preliminary injunction.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General

/s/ James A. Barta
JAMES A. BARTA
Solicitor General
*Counsel of Record*

LAUREN R. LABAUMBARD
Deputy Attorney General

Office of the Indiana Attorney General
302 W. Washington Street
IGC South, Fifth Floor
Indianapolis, IN 46204-2770
Phone: (317) 232-0709
Fax: (317) 232-7979
James.Barta@atg.in.gov

*Counsel for Amici Curiae*

17

# ADDITIONAL SIGNATORIES

STEVE MARSHALL
Attorney General
State of Alabama

STEPHEN J. COX
Attorney General
State of Alaska

TIM GRIFFIN
Attorney General
State of Arkansas

JAMES UTHMEIER
Attorney General
State of Florida

CHRISTOPHER M. CARR
Attorney General
State of Georgia

RAÚL R. LABRADOR
Attorney General
State of Idaho

BRENNA BIRD
Attorney General
State of Iowa

KRIS W. KOBACH
Attorney General
State of Kansas

RUSSELL COLEMAN
Attorney General
Commonwealth of Kentucky

LIZ MURRILL
Attorney General
State of Louisiana

LYNN FITCH
Attorney General
State of Mississippi

AUSTIN KNUDSEN
Attorney General
State of Montana

MICHAEL T. HILGERS
Attorney General
State of Nebraska

DREW H. WRIGLEY
Attorney General
State of North Dakota

DAVID A. YOST
Attorney General
State of Ohio

GENTNER F. DRUMMOND
Attorney General
State of Oklahoma

ALAN WILSON
Attorney General
State of South Carolina

MARTY JACKLEY
Attorney General
State of South Dakota

JONATHAN SKRMETTI
Attorney General and Reporter
State of Tennessee

KEN PAXTON
Attorney General
State of Texas

DEREK BROWN
Attorney General
State of Utah

JOHN B. MCCUSKEY
Attorney General
State of West Virginia

KEITH G. KAUTZ
Attorney General
State of Wyoming

STEVE MONTENEGRO
Speaker of the Arizona
House of Representatives

WARREN PETERSEN
President of the
Arizona Legislature

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,085 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font and is double-spaced except for footnotes and for quoted and indented material.

Dated: January 2, 2026                    /s/ James A. Barta
                                           James A. Barta

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: January 2, 2026                              /s/ James A. Barta
                                                    James A. Barta