No. 25-1579

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

ASHTON ORR; ZAYA PERYSIAN: SAWYER SOE: CHASTAIN ANDERSON; DREW HALL; BELLA BOE; REID SOLOMON-LANE; VIKTOR AGATHA; DAVID DOE; AC GOLDBERG; RAY GORLIN; CHELLE LEBLANC; on behalf of themselves and others similarly situated,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, in the official capacity as President of the United States; U.S. DEPARTMENT OF STATE; MARCO RUBIO, in the official capacity as Secretary of State; UNITED STATES OF AMERICA,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Massachusetts

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS

BRETT A. SHUMATE
  *Assistant Attorney General*

LEAH B. FOLEY
  *United States Attorney*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

CHARLES W. SCARBOROUGH
LEWIS S. YELIN
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave. NW, Rm. 7239*
  *Washington, D.C. 20530*
  *(202) 514-3425*
  *lewis.yelin@usdoj.gov*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................1

ARGUMENT ...........................................................................................................2

I.      Plaintiffs Concede That The Supreme Court's Stay Order Compels
        Vacatur Of The Preliminary Injunction....................................................2

II.     This Court Should Reject Plaintiffs' Arguments Concerning The
        Viability Of Their Claims On Remand Because They Are Inconsistent
        With The Supreme Court's Stay Order And Are Wrong........................4

        A.      Plaintiffs' Equal Protection Claims Are Not Viable On Remand..............4

        B.      Plaintiffs' APA Claims Are Not Viable On Remand................................12

        C.      Plaintiffs' Contentions That The District Court Remains Free To
                Conclude That The Balance Of Equities Favors Them Are
                Irrelevant And Lack Merit..........................................................................17

CONCLUSION ..................................................................................................... 21

CERTIFICATE OF COMPLIANCE

**Cases**

*Bradford v. U.S. Dep't of Lab.*,
101 F.4th 707 (10th Cir. 2024) ....................................................................................12

*Diamond v. Charles*,
476 U.S. 54 (1986) .......................................................................................................20

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) .....................................................................................................15

*Haig v. Agee*,
453 U.S. 280 (1981) ............................................................................................... 18, 19

*Heller v. Doe ex rel. Doe*,
509 U.S. 312 (1993) .....................................................................................................11

*In re Section 301 Cases*,
570 F. Supp. 3d 1306 (Ct. Int'l Trade 2022) ..............................................................15

*Moyle v. United States*,
144 S. Ct. 540 (2024) .....................................................................................................7

*Moyle v. United States*,
603 U.S. 324 (2024) ........................................................................................................7

*New York v. U.S. Department of Health & Human Servs.*,
414 F. Supp. 3d 475 (S.D.N.Y. 2019) ........................................................................17

*New York v. Trump*,
133 F.4th 51 (1st Cir. 2025) .........................................................................................17

*Nguyen v. Immigration & Naturalization Serv.*,
533 U.S. 53 (2001) ..................................................................................................... 5, 7

*Personnel Administrator of Massachusetts v. Feeney*,
442 U.S. 256 (1979) .......................................................................................................7

*Romer v. Evans*,
517 U.S. 620 (1996) .................................................................................................. 9, 10

*Schuette v. BAMN*,
 572 U.S. 291 (2014) ..................................................................5

*Thompson v. Barr*,
 959 F.3d 476 (1st Cir. 2020) ....................................................8

*Together Emps. v. Mass Gen. Brigham Inc.*,
 19 F.4th 1 (1st Cir. 2021) .......................................................18

*Trump v. Boyle*,
 145 S. Ct. 2653 (2025) ....................................................... 6, 19

*Trump v. Hawaii*,
 585 U. S. 667 (2018) ........................................................9, 10, 11

*United States v. Edge Broad. Co.*,
 509 U.S. 418 (1993) ..................................................................5

*United States v. Laub*,
 385 U.S. 475 (1967) ................................................................19

*Usman v. Holder*,
 566 F.3d 262 (1st Cir. 2009) ....................................................7

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
 454 U.S. 464 (1982) ................................................................20

*Whole Woman's Health v. Jackson*,
 141 S. Ct. 2494 (2021) ..............................................................6

*Whole Woman's Health v. Jackson*,
 595 U.S. 30 (2021) ............................................................... 6, 7

*Young v. United States*,
 315 U.S. 257 (1942) ..................................................................3

*Youngstown Sheet & Tube Co. v. Sawyer*,
 343 U.S. 579 (1952) ................................................................14

**Page(s)**

**Statutes**

5 U.S.C. § 701(b)(1) ................................................................14

5 U.S.C. § 706(2)(A) ...............................................................13

22 U.S.C. § 211a.............................................................12, 13, 14

**Executive Branch Material**

Exec. Order No. 10752,
23 Fed. Reg. 973 (Feb. 14, 1958) ...............................................16

Exec. Order No. 14168 .......................................................2, 3, 11, 12

**Other Authorities**

Elena Kagan, *Presidential Administration*,
114 Harv. L. Rev. 2245 (2001) ...............................................17

*Wright & Miller's Federal Practice & Procedure* § 2950 (3d ed.) ...............................6

# INTRODUCTION

In our opening brief we demonstrated that the district court's preliminary injunction must be vacated because the government is likely to succeed on the merits of plaintiffs' constitutional and Administrative Procedure Act (APA) claims and the balance of the harms tilts decisively in the government's favor. Plaintiffs' response brief makes no attempt to defend the injunction. Indeed, plaintiffs agree that it "should be vacated." Br. 1; *see* Br. 47. However, they ask this Court to vacate the injunction and remand the case "without further proceedings or additional analysis." Br. 1; *see* Br. 47. At the same time, plaintiffs ask the Court to provide "guidance" (Br. 2) to the district court about how to adjudicate their claims on remand, suggesting that they may yet prevail on various claims notwithstanding the Supreme Court's stay order. Plaintiffs cannot have it both ways. This Court may vacate the preliminary injunction only if it was legally erroneous, and this Court should explain the reasons for so holding. That is especially so because those reasons will be relevant on remand. The Court likewise should not provide the guidance plaintiffs request, which is meritless. If anything, this Court should explain that plaintiffs' claims are either foreclosed by the Supreme Court's stay order or are wrong on the merits.[1]

---

[1] As explained in the governments' opening brief (at 6-10), the district court first issued an injunction in favor of six individual plaintiffs, then extended the injunction to a class it certified (the PI Class). The arguments in this brief address both the individual and class-wide extension of the injunction.

**ARGUMENT**

**I.     Plaintiffs Concede That The Supreme Court's Stay Order Compels Vacatur Of The Preliminary Injunction**

In its stay order, the Supreme Court concluded that "[d]isplaying passport holders' sex at birth no more offends equal protection principles than displaying their country of birth—in both cases, the Government is merely attesting to a historical fact without subjecting anyone to differential treatment." Opening Br. Add. 1. The government's opening brief explained that this conclusion, made on the same record presented here, forecloses plaintiffs' equal protection claims. Because the Passport Policy requires every passport, for every individual, to reflect immutable biological characteristics, it does not "subject[] anyone to differential treatment," *id.*, and so does not discriminate based on sex.[2] Opening Br. 18-24.

The Supreme Court also concluded that plaintiffs were not likely to prevail "in arguing that the State Department acted arbitrarily and capriciously by declining to depart from Presidential rules that Congress expressly required it to follow." Opening Br. Add. 1. As explained in our opening brief (at 35-37), that determination, which was also made on the same record presented here, is binding in this appeal and

---

[2] As in the government's opening brief, "Passport Policy" refers to two changes required by Exec. Order No. 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* (Jan. 20, 2025), 90 Fed. Reg. 8615 (Jan. 30, 2025) (Executive Order), that plaintiffs challenge and the district court enjoined: (1) requiring passports to reflect a passport holder's biological sex as "M" or "F," and (2) eliminating the option of an "X" sex marker. *See* Opening Br. Add. 15.

forecloses plaintiffs' contention that the State Department acted arbitrarily and capriciously by implementing the requirement in Executive Order 14168 that the sex marker on passports reflect biological sex. Opening Br. 35-37.

In light of the Supreme Court's stay order, plaintiffs concede (Br. 1) that the preliminary injunction must be vacated. They do not contest the showing in our opening brief that they failed to demonstrate a likelihood of success on their equal protection or APA claims. That is sufficient to dispose of this appeal, but plaintiffs cannot avoid an adverse decision on the merits by conceding on appeal that the preliminary injunction is indefensible. *See id.* (arguing that the Court should vacate the injunction and remand without "additional analysis"). It would not be consistent with reasoned decision-making for this Court to conclude that the district court erred in granting the preliminary injunction without providing any explanation for that conclusion. Appellate courts cannot vacate judgments based merely on "the stipulation of parties" because "judicial obligations compel [courts] to examine independently the errors confessed." *Young v. United States*, 315 U.S. 257, 258-59 (1942). In an important, high-profile case such as this, the public has an interest in knowing what the Court concluded and why. Moreover, fulsome analysis by this Court is especially important in this interlocutory posture, where claims remain to be litigated on remand and the plaintiffs' requests for guidance from this Court illustrate that they do not understand the full implications of the Supreme Court's stay order on

3

those claims. This Court should reverse the district court's order and vacate the preliminary injunction and fully explain the reasons for that decision.

## II. This Court Should Reject Plaintiffs' Arguments Concerning The Viability Of Their Claims On Remand Because They Are Inconsistent With The Supreme Court's Stay Order And Are Wrong

Rather than defending the preliminary injunction, plaintiffs devote their entire brief on appeal to arguments that the Supreme Court's stay order does not preclude them from pursuing various claims on remand. See Br. 23-29 (stay order does not preclude plaintiffs from pursuing their APA claim); Br. 34-42 (stay order does not preclude plaintiffs from pursuing their equal protection claims); Br. 43-46 (stay order does not preclude district court from finding that plaintiffs will be irreparably harmed or that balance of equities favors them). Those arguments fail to appreciate the degree to which the Supreme Court's stay order has resolved critical legal issues in this case and forecloses plaintiffs' claims on the merits.

### A. Plaintiffs' Equal Protection Claims Are Not Viable On Remand

**1.** Plaintiffs contend (Br. 36, 40) that the Supreme Court's conclusion that the Passport Policy does not offend equal protection principles addresses only whether the policy facially discriminates, leaving plaintiffs free to develop an as-applied equal protection argument. That is an untenable reading of the stay order and is inconsistent with plaintiffs' concession that the policy "affects every person in the country in the same way." ECF 78, at 1. Indeed, plaintiffs' objection is that the government will treat

4

them exactly like every other passport applicant. Refusing to provide a special accommodation from a neutral policy cannot plausibly be described as equal protection violation at all. *See Schuette v. BAMN*, 572 U.S. 291, 298-315 (2014) (plurality opinion) (concluding that equal protection does not forbid banning affirmative action); *id.* at 316-17 (Scalia, J., concurring in the judgment) (same). Moreover, even assuming intermediate scrutiny applies to plaintiffs' claims, plaintiffs have no valid as-applied challenge to the Passport Policy. The "substantially related" standard requires only a reasonable fit, not a perfect fit. The tiny percentage of trans-identifying individuals who object to a sex-designation policy that is facially valid for nearly all people have no valid as-applied claim. *See Nguyen v. Immigration & Naturalization Serv.*, 533 U.S. 53, 70 (2001); *see also United States v. Edge Broad. Co.*, 509 U.S. 418, 429-31 (1993) (First Amendment context).

Plaintiffs appear to suggest (Br. 20-23) that a district court is free to reconsider conclusions of law made by the Supreme Court in the very same case and that the district court here is therefore not bound by the specific legal conclusions in the stay order discussed above. That is incorrect. The Supreme Court's determination that one party is likely to prevail below may not preclude a lower court from granting judgment to the other party based on further developments in the suit. But where an interim Supreme Court order makes an unqualified legal conclusion—such as the Supreme Court's holding here that "[d]isplaying passport holders' sex at birth" does not offend equal protection principles because "the Government is merely attesting to a historical

fact without subjecting anyone to differential treatment" (Opening Br. Add. 1)—

lower courts are not free to second-guess that determination.

Plaintiffs identify no authority to the contrary. The stay order in *Trump v. Boyle*,

145 S. Ct. 2653, 2654 (2025), stated that the Court's interim orders are not conclusive

as to ultimate success on the merits. *See* Br. 3, 21. But the Supreme Court did not

address the binding nature of specific legal conclusions in its stay orders on

subsequent proceedings in the lower courts in the same case. And the statement in

*University of Texas v. Camenisch* that "findings of fact and conclusions of law made by a

court granting a preliminary injunction are not binding at trial on the merits" concerns

a district court's authority to reconsider its own preliminary factual and legal findings,

not the binding nature of legal conclusions in orders from superior courts in the same

case. 451 U.S. 390, 395 (1981); 11A *Wright & Miller's Federal Practice & Procedure* § 2950

(3d ed.), Westlaw (database updated Sept. 2025) (same); *see* Br. 21.[3]

---

[3] Plaintiffs' reliance (Br. 21) on the Supreme Court's interim order and merits decision in *Whole Woman's Health v. Jackson* is even more meritless. Plaintiffs erroneously say that the Supreme Court denied a stay of an injunction (*id.* (discussing 141 S. Ct. 2494 (2021))) but then "vacat[ed the] injunction based on final merits findings" (*id.* (discussing 595 U.S. 30, 51 (2021))). In fact, the Supreme Court's interim order denied the plaintiffs' application for a pre-enforcement injunction against the enforcement of a state law. 141 S. Ct. at 2495; *see* 595 U.S. at 37-38. The Supreme Court's order denying that request expressly disclaimed making any definitive ruling on plaintiffs' substantive claims. 141 S. Ct. at 2495-96. The Supreme Court's subsequent decision did not vacate any injunction as none had been entered. Instead, it held that plaintiffs' pre-enforcement challenge could proceed against some defendants but not others. 595 U.S. at 35. Plaintiffs' reliance (Br. 21) on the Supreme Court's orders in *Moyle v. United States* is equally meritless. The interim order staying

On the merits, plaintiffs assert that their equal protection claim remains viable because the Supreme Court's holding that the Passport Policy does not discriminate based on sex leaves open the possibility that the policy discriminates based on sex because the government adopted the policy to "forc[e] people into roles based on sex stereotypes." Br. 40. This argument, which is made in a single paragraph in plaintiffs' appellate brief, is wholly undeveloped and is therefore forfeited. *See Usman v. Holder*, 566 F.3d 262, 268 (1st Cir. 2009) (holding that a "three-sentence," "conclusory" paragraph forfeited argument). Plaintiffs' only support for their conclusory assertion is an unexplained citation to *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979). Br. 40. *Feeney* recognized that a statute's "adverse effect[]" on women could constitute sex discrimination if a legislative purpose was to "keep[] women in a stereotypic" role. 442 U.S. at 279. But "acknowledg[ing] … our most basic biological differences" does not amount to sex stereotyping. *Nguyen*, 533 U.S. at 73; *see id.* at 69. The Supreme Court determined that the Passport Policy "merely attest[s] to *a historical fact* without subjecting anyone to differential treatment." Opening Br. Add. 1 (emphasis added). And as the Supreme Court held (*id.*), and as plaintiffs concede, the challenged policy applies equally to "all people" (ECF 78, at 11), "affect[ing] every

---

the district court's injunction and granting certiorari contains no legal analysis. 144 S. Ct. 540 (2024). And the Court's subsequent dismissal of the writ as improvidently granted, 603 U.S. 324 (2024), had no effect on any substantive issue in that or any other case.

person in the country in the same way" (*id.* at 1, 11). Thus, plaintiffs' sex-stereotype claim does not survive the Supreme Court's stay order.

**2.** Plaintiffs also contend that the Supreme Court's stay order does not foreclose their argument that trans-identifying individuals are a quasi-suspect class for equal protection purposes, requiring heightened scrutiny of government action that discriminates against them. Br. 34-36. But the Supreme Court concluded that the Passport Policy does not discriminate against anyone because "the Government is merely attesting to a historical fact without subjecting anyone to differential treatment." Opening Br. Add. 1. And plaintiffs fail to address the argument in our opening brief (at 24-26) that even if trans-identifying individuals are a quasi-suspect class, the Passport Policy does not discriminate against them because it treats them the same as everyone else. They have therefore forfeited any contrary argument. *See, e.g.*, *Thompson v. Barr*, 959 F.3d 476, 490 n.11 (1st Cir. 2020). In any event, as we explained in our opening brief (at 25-26), trans-identifying individuals are not a quasi-suspect class. Plaintiffs nowhere respond to that argument and so have forfeited any argument to the contrary. *See id.*

**3.** In our opening brief we also explained (at 26-28), that because the Passport Policy does not discriminate based on sex or based on trans-identifying status (which is, in any event, not a quasi-suspect category), the Passport Policy is subject only to rational basis review. Plaintiffs contend that they can establish that the Passport Policy fails rational basis review because it reflects animus toward trans-identifying

individuals. Br. 37-40. But plaintiffs concede (Br. 38), as they must, that the Supreme Court decided that the record in this case provides no basis for concluding that the policy "lack[s] any purpose other than a bare … desire to harm a politically unpopular group." Opening Br. Add. 1 (alterations in original) (quoting *Trump v. Hawaii*, 585 U. S. 667, 705 (2018)). Plaintiffs nonetheless contend that they should be permitted to engage in a fishing expedition into the "decision-making process underlying the Policy" to find some evidence to support their allegations of animus. Br. 38. However, under *Hawaii*, a policy challenged on animus grounds must be upheld so long as it is possible to "discern a relationship to legitimate state interests." 585 U.S. at 706 (quoting *Romer v. Evans*, 517 U.S. 620, 635 (1996)). That is, the policy may not be held unconstitutional unless it is "inexplicable by anything but animus." *Id.* (quoting *Romer*, 517 U.S. at 632). As the government's opening brief demonstrated (at 26-28), the Passport Policy furthers the government's legitimate interests in establishing a meaningful basis for identification and a uniform definition of sex. Thus, the Passport Policy may not be enjoined on animus grounds.

Plaintiffs object that the standard articulated in *Hawaii* is inapplicable to their animus claims because *Hawaii* "was an Establishment Clause decision that did not engage with the governing equal protection principles established by decades of precedent." Br. 39. There are multiple problems with that contention. First, the Supreme Court's stay order in this very case relied on *Hawaii* to evaluate plaintiffs' equal protection claims. Second, *Hawaii* adopted language from *Romer v. Evans*, an

9

equal protection case, to articulate the standard governing its analysis of the animus claims. *See Hawaii*, 585 U.S. at 706; *Romer*, 517 U.S. at 631-32. And third, the substantive nature of the underlying claim is immaterial to animus analysis. Demonstrating that a government action can be explained by something other than animus is a way of refuting the contention that the action fails rational-basis review, regardless of the constitutional infirmity alleged. *See Hawaii*, 585 U.S. at 705-06; *Romer*, 517 U.S. at 631-32. Because any further development of the record could not establish that the Passport Policy is "inexplicable by anything but animus," *Hawaii*, 585 U.S. at 706 (quotation marks omitted), plaintiffs' animus claims are not viable on remand.

**4.** Plaintiffs repeatedly argue that they will be able to resuscitate their equal-protection claims through discovery on remand. Discovery, they say, will establish that the Passport Policy "was *intended* to discriminate on the basis of sex, including by enforcing sex stereotypes." Br. 18; *see* Br. 35-36, 39-40. They also contend that discovery "will be critical to developing a record that more fully demonstrates animus." Br. 18; *see* Br. 38-40S. And plaintiffs say that discovery will allow them to probe what they describe as the government's "constantly changing series of justifications for the Policy." Br. 41. All these arguments fail because plaintiffs' equal-protection claims are legally foreclosed, and the various forms of discovery plaintiffs contemplate would all be futile.

No amount of discovery can establish that a policy that does not "subject[]" anyone to differential treatment" (Opening Br. Add. 1) and that "affects every person

in the country in the same way" (ECF 78, at 1) qualifies as discrimination of any sort, let alone discrimination based on sex. No discovery can establish that the Passport Policy is "inexplicable by anything but animus," *Hawaii*, 585 U.S. at 706 (quotation marks omitted), when that policy plainly has "a relationship to [the] legitimate state interests," *id.* (quotation marks omitted), in providing a meaningful basis for identification and a uniform definition of sex. Moreover, because the Passport Policy is subject only to rational basis review, the relationship of the policy to any single legitimate state interest is sufficient to defeat an equal protection challenge; indeed it is plaintiffs' burden "'to negative every conceivable basis which might support it,' whether or not the basis has a foundation in the record." *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320-21 (1993) (citation omitted). Accordingly, plaintiffs may not use discovery to undertake a fishing expedition into the "justifications" (Br. 42) for the Passport Policy.

In any event, plaintiffs are wrong in contending that the government has offered "constantly changing" (Br. 41) explanations for the policy. Executive Order 14168 directed the adoption of a uniform definition of sex in part because of the government's legitimate interest in using sex as a meaningful basis for identification. App. 2. The government identified that interest in the district court (*see, e.g.*, ECF 53, at 20, 26) and in its opening brief in this Court (*see, e.g.,* Opening Br. 14-15, 27). That there are *additional* legitimate government interests supporting the policy only

11

underscores the futility of plaintiffs' intended discovery into the government's justifications for the policy.

> **B.    Plaintiffs' APA Claims Are Not Viable On Remand**

**1.** As explained in the government's opening brief (at 32-34), plaintiffs' challenge to the Passport Policy is not subject to review under the APA because that policy was mandated by Executive Order 14168. But even if the Passport Policy, or some aspect of it, were subject to review, plaintiffs' arbitrary-and-capricious claims are doomed by the Supreme Court's legal determination that the Passport Policy is the result of "Presidential rules that Congress expressly required [the State Department] to follow." Opening Br. Add. 1. Put simply, it cannot be arbitrary or capricious for an agency to implement rules specifically prescribed by the President, which Congress directed the agency to execute. *Id.*; *see Bradford v. U.S. Dep't of Lab.*, 101 F.4th 707, 731 (10th Cir. 2024) (agency action "could not have been an arbitrary and capricious exercise of agency discretion because the agency had *no discretion* to act otherwise"). No amount of additional briefing can change that fundamental flaw in plaintiffs' APA claims.

The Passport Act directs "[t]he Secretary of State [to] grant and issue passports … under such rules as the President shall designate and prescribe." 22 U.S.C. § 211a. Thus, the statute itself requires the Department to follow the President's "rules." *Id.* Here, the two challenged changes to the prior Passport Policy—(1) the "withdr[awal]" of "the option" to self-select a sex marker based on "gender identity," and (2) the

"remov[al]" of "the option" to "select 'X' as [a] sex marker"—were both dictated by the President's rules (*i.e.*, the Executive Order). Opening Br. Add. 15. Accordingly, the Passport Act required the Department to make both of those changes. The Department's decision to do so therefore was not "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

Plaintiffs mischaracterize the government's argument as a contention "that no agency action taken pursuant to an executive order could ever be arbitrary and capricious," suggesting that this "would upend basic principles of administrative law." Br. 30. That attacks a straw man. The government's argument is significantly more modest: in the rare case where, as here, Congress directs an agency to implement a rule prescribed by the President—rather than, as in the ordinary APA case, to exercise its own authority and discretion in formulating a rule—an agency does not act arbitrarily or capriciously insofar as it implements the President's rule. In that circumstance, an agency's decision *not* to implement the rule would "not [be] in accordance with law," 5 U.S.C. § 706(2)(A), because the agency would act contrary to the statutory directive, here the directive in the Passport Act, 22 U.S.C. § 211a.

Plaintiffs correctly note (Br. 25) that the State Department did exercise some independent discretion in determining *how* to implement the Passport Policy. For example, the Department chose to rely on birth certificates and other documentation issued close to an applicant's birth to determine a passport applicant's sex. *See, e.g.*, App. 142. But plaintiffs do not challenge the ways in which the agency exercised its

limited discretion to implement the policy; they challenge aspects of the policy compelled by the Executive Order. For example, plaintiffs do not challenge, and the district court did not enjoin, the State Department's decision to rely on birth certificates or any other independent determination the agency made in implementing the Passport Policy. *See* Opening Br. Add. 15, 106; App. 55-59 (Complaint); App. 126-29 (Amended Complaint). Rather than challenging how the Department may determine a person's biological sex under the Executive Order, plaintiffs challenge the core policy of defining sex in terms of biology rather than the nebulous concept of "gender identity." Because that is the policy adopted by the President, which the State Department was required to implement, plaintiffs' arbitrary-and-capricious challenge to the Passport Policy is doomed to fail just as surely on remand as it does at the preliminary injunction phase of this case.

**2.** More fundamentally, plaintiffs' APA challenge is at heart a challenge to the passport rules the President prescribed, which are not reviewable under the APA. The Passport Act expressly vests "the President," not the State Department, with exclusive authority to "designate and prescribe" rules for granting and issuing passports. 22 U.S.C. § 211a. That delegation puts the President's "authority … at its maximum," encompassing "all that he possesses in his own right" based on his considerable Article II foreign-affairs authorities "plus all that Congress can delegate." *Youngstown Sheet & Tube Co.* v. *Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring). Because the President is not an "agency" under the APA (5 U.S.C. § 701(b)(1)), the President's

14

exercise of discretion in identifying rules governing passports is "not subject to [the APA's] requirements" and is "not reviewable" under the APA (*Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992)).

Plaintiffs' attempts to distinguish *Franklin* (Br. 24-25) are meritless. It is irrelevant that the President was the last-in-time executive actor in *Franklin* but left nuts-and-bolts implementation to the State Department here. The dispositive point is that presidential actions are unreviewable when the President's "duties [we]re not merely ceremonial or ministerial," *Franklin*, 505 U.S. at 800, but dictated the substance of the challenged agency action.[4] Here, the President made the critical determination that sex markers on passports should be based exclusively on biological sex; the State Department had no authority to disagree. *Franklin* also forecloses plaintiffs' reliance (Br. 4) on the "presumption" of reviewability. A separate opinion in *Franklin* made the same point (505 U.S. at 816 (Stevens, J., concurring in part and concurring in the judgment)), but the Court explained that courts "must presume" that the President's actions are "not subject to [the APA's] requirements" (*id.* at 801) (majority opinion).

Plaintiffs suggest that if the Passport Act precludes APA review of the State Department's implementation of the President's Executive Order, agency action

---

[4] Plaintiffs' reliance on a decision from the U.S. Court of International Trade (Br. 28, citing *In re Section 301 Cases*, 570 F. Supp. 3d 1306, 1316-21, 1323-26 (Ct. Int'l Trade 2022)) is unavailing because that decision mistakenly concludes that *Franklin* does not ever preclude review of agency action implementing a mandatory presidential directive.

under a variety of other statutes also would likewise not be subject to APA review because those statutes "referenc[e] presidential authority to issue directives." Br. 28; *see* Br. 28 n.5 (collecting statutes). But a statutory "referenc[e]" is not enough to preclude review. APA review is precluded when Congress gives the President authority to prescribe rules *and* the President actually specifies the rules *and* the agency ministerially implements the rules. Although Congress has given the President authority to prescribe rules in various other contexts, the President has frequently delegated his authority to the agencies to promulgate governing regulations. For purposes of reviewability under the APA, when agencies issue regulations under delegated discretion, their actions generally are subject to review under the APA. Thus, for example, one of the statutes plaintiffs identify (Br. 28 n.5) gives the President authority to prescribe regulations concerning, among other things, "the production, storage, refining, processing, transporting, or handling of petroleum and petroleum products" (15 U.S.C. § 715d). The President long ago delegated to the Secretary of the Interior the authority to issue such regulations. Exec. Order No. 10752, 23 Fed. Reg. 973 (Feb. 14, 1958). Challenges to those regulations thus would not be challenges to presidential decisions and are reviewable under the APA. By contrast, when, as here, an agency is ministerially implementing a rule Congress

authorized the President to prescribe, review under the APA is unavailable.[5] *See* Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2351 (2001).

In short, plaintiffs have no viable APA claims on remand for all the same reasons that those claims failed at the preliminary injunction stage.

### C. Plaintiffs' Contentions That The District Court Remains Free To Conclude That The Balance Of Equities Favors Them Are Irrelevant And Lack Merit

Rather than defending the preliminary injunction on the merits, plaintiffs insist (Br. 43-47) that the Supreme Court's stay order "does not preclude" the district court from finding on remand that plaintiffs would suffer irreparable injury and that the balance of equities favors plaintiffs. That is both irrelevant and wrong.

**1.** Plaintiffs fail to appreciate the extent to which the Supreme Court's stay order undermines any argument on remand that the balance of equities favors them rather than the government. That order emphasized that "the District Court's grant of class-wide relief enjoins enforcement of an Executive Branch policy with foreign

---

[5] Plaintiffs' reliance (Br. 26-28) on *New York v. Trump*, 133 F.4th 51 (1st Cir. 2025), and *New York v. U.S. Department of Health & Human Servs.*, 414 F. Supp. 3d 475, 521 (S.D.N.Y. 2019), is misplaced. In those cases, there was no contention that the agencies were ministerially implementing a rule Congress authorized the President to make. For the same reason, plaintiffs' observation that "the Supreme Court routinely conducts APA review of agency actions that implement presidential directives" (Br. 27) misses the point. There is a fundamental difference between a presidential directive, such as in those cases, for an agency to formulate a rule exercising its own statutory authority, and a presidential directive, as in this case, for an agency to ministerially implement a rule formulated by the President under his own statutory authority.

affairs implications concerning a Government document." Opening Br. Add. 1. For that reason, the Supreme Court held that "the Government will suffer[] a form of irreparable injury absent a stay." *Id.* at 1-2 (alteration in original) (quotation marks omitted). Plaintiffs try to resist that determination, arguing that "various aspects of the passport issuance process *do not* implicate the President's foreign-affairs powers." Br. 46. That statement is beside the point because, for purposes of this case, the stay order establishes the legal principle that interference with "an Executive Branch policy with foreign affairs implications concerning a Government document" (Opening Br. Add. 1) is a type of injury that is irreparable. *Cf., e.g., Together Emps. v. Mass Gen. Brigham Inc.*, 19 F.4th 1, 8 (1st Cir. 2021) (holding that where money damages are an available remedy, economic harm is not irreparable). The stay order also conclusively determines that interference with the Passport Policy will as a factual matter cause the government irreparable harm. Opening Br. Add. 1. That factual determination also governs any further litigation in this case.

Plaintiffs' contention that the government's foreign-affairs argument is "waived" is therefore difficult to understand, as is their contention that the government has failed to explain "how sex markers on passports could possibly implicate foreign affairs." Br. 48 n.8. In any event, we explained in our opening brief that a passport is a "political document" issued by the United States and "addressed to foreign powers" that "request[s] foreign powers to allow the bearer to enter and to pass freely and safely." Opening Br. 2 (first quoting *Haig v. Agee*, 453 U.S. 280, 292

18

(1981), and then quoting *United States v. Laub*, 385 U.S. 475, 481 (1967)). Because a passport is "an official communication 'by which the Government vouches for the bearer and for his conduct'" (Opening Br. 2 (quoting *Agee*, 453 U.S. at 293)), the district court's injunction injures the government by "dictat[ing] the contents of official U.S. communications with foreign sovereigns" thus "depriv[ing] the government of control over its own speech" (*id.* at 44). For example, it would have obvious foreign-affairs implications for the United States to tell Saudi Arabia that a given individual is a woman when that individual is actually a biological man. Plaintiffs' contention that some aspects of passport issuance do not implicate the government's foreign affairs powers fails to address this critical point.

In granting the stay, the Supreme Court recognized that the district court's class-wide injunction irreparably harms the government and the public by blocking the President's exercise of his constitutionally and statutorily conferred power to prescribe rules on the issuance of passports. As discussed below, plaintiffs did not establish that the Passport Policy causes them irreparable harm at the preliminary injunction phase, and the stay order makes clear that they will not be able to do so on remand. Regardless of the procedural posture, plaintiffs' interest in dictating the government's communications with foreign sovereigns will always be substantially outweighed by the interests of the government. The Supreme Court's equitable determination is binding on the district court. *See Boyle*, 145 S. Ct. at 2654. And there is no basis to speculate that the balance of the harms will change on remand.

19

**2.** Plaintiffs reiterate their contention that the Passport Policy will cause them various psychological harms. Br. 44. As explained in our opening brief (at 42), however, plaintiffs' inability to force the government to describe their sex in the way plaintiffs prefer does not give rise to any cognizable, let alone irreparable, harm. In particular, psychological distress caused by disagreement with government speech cannot count as irreparable injury, lest every policy disagreement with the government turn into irreparable injury. *Id.* (first citing *Diamond v. Charles*, 476 U.S. 54, 62 (1986), and then citing *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982)). Plaintiffs nowhere respond to that argument.

Plaintiffs also reiterate their claim that the Passport Policy increases the risk that that they will be subject to harassment while traveling. Br. 44. However, as we explained in our opening brief (at 42), any alleged harassment would stem from others' conduct and so cannot provide any basis for a claim that the Passport Policy itself causes irreparable harm. Again, plaintiffs nowhere respond to that argument. Plaintiffs also fail to respond to any of the government's arguments that plaintiffs had not established that members of the PI Class would suffer irreparable harm without an injunction. *See* Opening Br. 40-41 (noting, among other things, that membership in the class is not conditioned on whether an individual has concrete international travel plans, so any travel-related injury is speculative).

## CONCLUSION

The Court should reverse the district court's injunction order and vacate the preliminary injunction, explaining the reasons for its decision.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

LEAH B. FOLEY
  *United States Attorney*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

CHARLES W. SCARBOROUGH

s/ *Lewis S. Yelin*

LEWIS S. YELIN
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave. NW, Rm. 7239*
  *Washington, D.C. 20530*
  *(202) 514-3425*
  *lewis.yelin@usdoj.gov*

March 2026

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because it contains 5,308 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Lewis S. Yelin*
Counsel for Appellants